UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE RODRIGUEZ, | ) | 1:08-cv-00847-LJO-JMD-HC |
| | ) | |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PETITION FOR WRIT OF |
| v. | ) | HABEAS CORPUS |
| | ) | |
| JAMES HARTLEY, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | OBJECTIONS DUE WITHIN THIRTY DAYS |

Petitioner Joe Rodriguez ("Petitioner") is a state prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

On October 11, 1985, a jury convicted Petitioner of first degree murder and found true the allegation that Petitioner had used a firearm in the commission of the murder. (Pet. at 13). The trial court sentenced Petitioner to twenty-five years to life imprisonment and imposed a two-year enhancement for use of a firearm. (Pet. at 14). The California Court of Appeal affirmed Petitioner's conviction on March 17, 1987. (Answer, Ex. 3b at 27).

Petitioner appeared before California's Board of Parole Hearings (BPH) for a parole suitability hearing on November 15, 2006. (Answer, Ex. 1b at 73). The BPH found Petitioner unsuitable for parole. (Id.).

Petitioner challenged the BPH's decision to deny him parole by filing a petition for writ of habeas corpus with the California Superior Court on April 25, 2007. (Answer, Ex. 5).

1  The Superior Court denied Petitioner's state habeas petition in the last reasoned decision issued by
2  the State. (Id.).

3  Petitioner filed a habeas petition in the California Court of Appeal, which was summarily
4  denied on October 10, 2007. (Answer, Ex. 7). Petitioner then filed a petition for review before the
5  California Supreme Court. The California Supreme Court summarily denied the petition on May 14,
6  2008. (Answer, Ex. 9).

7  Petitioner filed the instant petition for writ of habeas corpus in the United States District
8  Court for the Eastern District of California on June 18, 2008. (Doc.1). Respondent filed an answer
9  to the petition on September 26, 2008. (Doc. 12). Petitioner filed a traverse on October 17, 2008.
10 (Doc. 14).

## Factual Background

The BPH's finding that Petitioner was not suitable for parole at his 2006 hearing was based on 1) the nature and magnitude of Petitioner's commitment offense, and 2) Petitioner's criminal history. The California Court of Appeal summarized the facts of Petitioner's commitment offense in connection with Petitioner's direct appeal of his conviction:

> Around 2 a.m. on June 15, 1985, in Barstow's Lenwood Park, the victim was shot in the shoulder, then, as he spun around, twice in the back and once in the head. He fell to the ground and died. All four shots were from a .38 caliber gun. A witness who heard the shots then saw an older, white pickup truck take of as its passenger door was closing. The victim was a well-known drug dealer. [footnote omitted].
>
> Five hours earlier, Rodriguez and a companion had gone to the victim's home where they shared some PCP the victim had. Impressed with its quality, Rodriguez said he wanted to buy more and he and the victim agreed to split the cost of a $200 bottle of liquid PCP. Rodriguez left and returned with his share of the money, but the victim was unable to come up with his...
>
> All three men went to the companion's house, where they were joined by Christopher Davis. Rodriguez and the victim began arguing in loud voices about being "ripped off." The victim assured Rodriguez he could trust him. Rodriguez threatened to "blow [the victim] away" if he ripped him off....
>
> All four men then drove to a nearby convenience store where Rodriguez and the victim talked for a while before the victim took off on foot. The three remaining men drank beer and talked behind the store for awhile before Rodriguez left to find his friend, Robert Padilla.
>
> Padilla testified Rodriguez came to his house around 10:45...and invited Padilla to join him and smoke some of the PCP when the victim delivered it. Padilla agreed and accompanied Rodriguez back to the store...

> [A]round 12:30 a.m. the victim returned...Rodriguez suggested all five men go to Padilla's house to smoke the PCP.
>
> The men arrived at the house...Padilla testified the victim gave Rodriguez a bottle that was one-fourth full of PCP and worth $50-65. Twice, Rodriguez asked the victim where the rest of the PCP was. The victim replied his supplier didn't have enough and he'd get more when the supplier returned home. The victim gave Rodriguez $20 of his money back. Padilla dipped a cigarette in the PCP and used the rest to make joints, which all five men smoked, until one began to "freak out." Davis and the victim put that man in Davis' car and took off. Rodriguez and Padilla returned to the latter's house. Padilla testified, at 1:30, he and Rodriguez got in Padilla's white truck and headed towards Rodriguez's house[1]...
>
> [Padilla] and Rodriguez were on the way to the latter's house when they drove through the center of town and saw the victim sitting on the corner. The victim then asked Padilla for a ride home and Padilla agreed....Rodriguez asked the victim twice when he was going to give him the rest of the PCP or a refund of his money. The victim replied he'd get it "later or tomorrow morning." As they neared Lenwood Park, Rodriguez asked Padilla to stop the truck, saying he needed to throw up. The victim and Rodriguez got out of the truck and began arguing about the PCP. They shouted at each other for three minutes as they moved away from the truck. Padilla remained inside. Suddenly, a shot rang out. Padilla testified he turned to see Rodriguez and the victim standing facing each other. He then heard three more shots and turned away. When he turned back, he saw Rodriguez approaching the truck, holding a .38 caliber gun...Rodriguez got inside the truck and told Padilla he had just shot the victim and Padilla was not to say anything to anyone about it. Padilla then drove Rodriguez home.
>
> Rodriguez claimed he and the victim originally agreed to purchase only $100 worth of PCP...Rodriguez acknowledged receiving a $20 refund from the victim at Padilla's house, just before the men began smoking the PCP cigarettes.

(Answer, Ex. 3b at 28-30).

With respect to Petitioner's criminal history, Petitioner recounted that he had a juvenile record consisting of two separate instances of possession of a deadly weapon and one instance of possession of marijuana. (Answer, Ex. 1a at 74). The BPH also questioned Petitioner about an entry on his probation report which indicated that Petitioner had suffered an "ADW charge" in December of 1981. (Id.). Petitioner stated that he had no knowledge of the ADW offense. (Id.).

///
///
///

---

[1] The Court of Appeal noted that the witnesses' testimonies began to diverge after this point in the narrative; the discrepancies noted by the Court of Appeal are immaterial to resolution of Petitioner's claims.

**Discussion**

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a);[2] 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

Petitioner asserts that he is currently incarcerated at Avenal State Prison in Kings County, California, in violation of his right to due process under the United States Constitution. As Kings County is within the Eastern District of California, the Court has jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

**II.    Standard of Review**

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for writ of habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively

---

[2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).  In reviewing a state court's summary denial of a state habeas petition, the Court must "look through" the summary disposition to the last reasoned decision issued by the state. *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991).  As the California Court of Appeal and the California Supreme Court both summarily denied Petitioner's state habeas petition, the Court must review the reasoned decision of the Superior Court denying Petitioner relief.  The California Supreme Court is presumed to have rejected Petitioner's state habeas petition for the same reasons set forth in the reasoned decision of the Superior Court. *Id.* at 803.

### III.  Petitioner's Due Process Claim

#### A.  Due Process in the Parole Context

The Due Process Clause of the Fourteenth Amendment of the United States Constitution prohibits states from depriving persons of protected liberty interests without due process of law. *See e.g.*, *Sass*, 461 F.3d at 1127.  The Court must "analyze Petitioner's due process claim in two steps: 'the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

California law vests prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12 (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  While California's parole statute creates a liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v. Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987).  The Ninth Circuit has repeatedly held that due process requires that a parole board's denial of parole to a prisoner be supported by "some evidence." *Irons*, 505 F.3d at 851 (citing *Sass*, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*,

1  472 U.S. 445, 457(1985)); *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

2  The requirement that the Board's denial of parole to Petitioner be supported by some evidence is

3  well established federal law.[3]  *Id.*; *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

4        The some evidence standard is minimal, and is meant only to "[assure] that 'the record is not

5  so devoid of evidence that the findings of...[the] board were without support or otherwise arbitrary.'"

6  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).  "Ascertaining whether [the some evidence]

7  standard is satisfied does not require...weighing of the evidence. ..the relevant question is whether

8  there is any evidence in the record that could support  the conclusion reached." *Hill*, 472 U.S. at

9  455-456.   Want of due process is not established by showing merely that incompetent evidence was

10 received and considered.  *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S.

11 103, 106 (1927).[4]  "Upon a collateral review in habeas corpus proceedings, it is sufficient that there

12 was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.*

13 "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside

14 decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456 (citations

15 omitted).

16       In assessing whether the Board's denial of parole to Petitioner is supported by some evidence,

17 the Court's analysis "is framed by the statutes and regulations governing parole suitability

18 determinations in the relevant state." *Irons*, 505 F.3d at 851.  Accordingly, the Court must "look to

19 California law to determine the findings that are necessary to deem a prisoner unsuitable for parole,

20 and then must review the record in order to determine whether the state court decision holding that

21 these findings were supported by 'some evidence' in [Petitioner's] case constituted an unreasonable

22 application of the 'some evidence' principle articulated in *Hill*." *Id.*  Under California law, the

23 paramount inquiry in determining whether to grant a prisoner parole is whether the prisoner "will

24 pose an unreasonable risk of danger to society if released from prison." CAL. CODE. REGS. TIT 15, §

---

[3] The Ninth Circuit is currently considering the "some evidence" standard en banc. *Hayward v. Marshall*, 512 F.3d 536, (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

[4] *Vajtauer* concerned a collateral challenge to an immigration decision.  The Supreme Court cited *Vajtauer* in support of its formulation of the some evidence standard in *Hill*. 472 U.S. at 455.

2402(a) (2008); *In re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal. 2008). Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the BPH in applying California's parole statute to Petitioner. Section 2402 provides in part:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b) (2008). Factors supporting a finding of unsuitability for parole include: the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; a record, prior to incarceration for the underlying offense, of violence; a history of unstable relationships with others; and serious misconduct while incarcerated. CAL. CODE REGS., tit. 15, § 2402 (c); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The factors listed in section 2402(c) "establish unsuitability [for parole] if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence*, 44 Cal.4th at 1212. "When a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a current threat to public safety...not merely whether some evidence confirms the existence of certain factual findings." *Id.* A rational nexus between the unsuitability factors applicable to the prisoner and the ultimate determination of dangerousness must exist. *See id.* at 1227.

**B. Evidence of Petitioner's Unsuitability for Parole**

The Superior Court found that the record contained some evidence supporting the BPH's determination that Petitioner would pose an unreasonable risk of danger to society if released on parole. (Answer, Ex. 5 at 5). The Court may not disturb the Superior Court's determination unless, based on the record, the Superior Court's finding of some evidence of dangerousness was objectively unreasonable. " *Lockyer*, 538 U.S. at 75.

///

Section 2402(c)(1) directs the BPH to consider the commitment offense in determining unsuitability for parole. CAL. CODE. REGS., tit. 15, § 2402 (c)(1). The California Supreme Court has established that "in some circumstances, a denial of parole based upon the nature of the offense alone might rise to the level of a due process violation...where no circumstances of the offense reasonably could be considered more aggravated or violent than the minimum necessary to sustain a conviction for that offense." *E.g.*, *In re Rosenkrantz*, 29 Cal. 4th 616, 683 (Cal. 2002). "Factors beyond the minimum elements of the crime include, inter alia, that '[t]he offense was carried out in a dispassionate and calculated manner,' that '[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering,' and that '[t]he motive for the crime is inexplicable or very trivial in relation to the offense.'" *Irons*, 505 F.3d at 852 (quoting CAL. CODE. REGS., tit. 15 § 2402(c)(1)(B), (D)-(E)). The commitment offense satisfies the some evidence standard only if the offense remains probative of current dangerousness. *Lawrence*, 44 Cal. 4th at 1202 (where evidence of inmate's rehabilitation and suitability for parole is overwhelming, and commitment offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved aggravated conduct does not provide "some evidence"). Although the law of the Ninth Circuit recognizes that reliance solely on a prisoner's commitment offense to deny parole may violate due process, no Ninth Circuit case has ever held that reliance on a prisoner's commitment offense violates due process prior to the expiration of the prisoner's minimum term. *See Irons*, 505 F.3d at 853-54.

The record reveals that the facts of Petitioner's crime may reasonably be considered more aggravated and violent than the minimum necessary to sustain a conviction for first degree murder. Petitioner shot the victim multiple times at close range, including two shots into the victim's back and one shot into the back of the victim's head. (Answer, Ex. 1a at 57). The fact that Petitioner shot the victim twice in the back and once in the back of the head reveals that the offense was carried out in a dispassionate and calculated manner. The record also demonstrates that the motive for the Petitioner's crime was extremely trivial. The victim had duped Petitioner out of, at most, eighty

dollars; the amount may even have been as little as fifteen dollars.[5] (Id. at 59-63). There is a rational nexus between the Petitioner's willingness to carry out an execution-style killing of a man over an eighty-dollar dispute and current dangerousness, despite Petitioner's commendable programing while incarcerated.

Section 2402(c)(2) directs the BPH to consider a prisoner's previous record of violence in determining whether to release the prisoner on parole. CAL. CODE. REGS. TIT 15, § 2402 (c)(2). A prisoner may be found unsuitable for parole if the prisoner "has on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age." *Id.* The BPH relied in part on Petitioner's criminal history in finding him unsuitable for parole, and the record reveals that Petitioner has a prior criminal history that includes two incidents of possession of a deadly weapon as a juvenile and one incident as an adult of assault with a deadly weapon. (Answer, Ex. 3b at 61-31). Together with the commitment offense, Petitioner's escalating pattern of violence is rationally related to the BPH's finding of current dangerousness.

Whether or not a prisoner understands "the nature and magnitude of the offense" is an express factor the BPH may consider in determining a prisoner's suitability for parole. CAL. CODE. REGS. TIT 15, § 2402 (d) (3). A prisoner's lack of insight into the crime or attempt to minimize the crime may constitute some evidence of current dangerousness. *Shaputis,* 44 Cal.4th at 1260. Although not expressly mentioned in the decision portion of the BPH's parole denial, during Petitioner's hearing, a member of the BPH noted that he was troubled by Petitioner's version of the crime and indicated that, in the BPH's view, Petitioner was being less than honest in discussing the crime. (Answer, Ex. 3a at 28-30). The presiding parole commissioner stated, "I have to tell you, its does not sound credible that you just shot at him almost casually...as you ran away from him." (Id. at 29).

///

---

[5] It is undisputed that Petitioner gave the victim one-hundred dollars to purchase drugs and received a twenty dollar refund as well as an undetermined amount of PCP. (Id.). According to one witness's account, Petitioner received fifty to sixty-five dollars worth of PCP in addition to the twenty-dollar refund. (Id.).

Viewed in light of the BPH's assessment of the nature of the commitment offense, Petitioner's criminal history, and Petitioner's attitude towards his crime, the Court cannot say that the Superior Court's finding that the some evidence standard was satisfied was objectively unreasonable. The precise manner in which the specified factors relevant to parole suitability are considered and balanced lies within the discretion of the parole board. *See, e.g., Shaputis*, 44 Cal. 4th at 1260. "It is irrelevant that a court might determine that evidence in the record tending to establish suitability for parole far outweighs evidence demonstrating unsuitability for parole." *Id.* So long as there is any evidence in the record that support's the conclusion reached by the BPH, the some evidence standard is satisfied. *See Hill*, 472 U.S. at 455-456. The Court also notes that Petitioner had not yet served the minimum number of years to which he was sentenced when he was denied parole in 2006.

## **RECOMMENDATION**

Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   August 3, 2009            /s/ John M. Dixon**
                                     UNITED STATES MAGISTRATE JUDGE